UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PEGGY PACE,                          )
                                     )
            Plaintiff                )
      vs.                            )   CAUSE NO. 3:07-CV-347 RM
                                     )
POTTAWATTOMIE COUNTRY                )
CLUB INC.,                           )
                                     )
            Defendant                )

OPINION AND ORDER

In July 2009, the jury entered a verdict in favor of Peggy Pace on her age discrimination complaint against Pottawattomie County Club. The case is before the court on Ms. Pace's post-verdict motion for determination of back pay and liquidated damages, pre-judgment interest, attorney's fees and costs, reinstatement to employment or front pay and injunctive relief (doc # 69). For the following reasons, the court awards damages in the amount of $75,108 in back pay, $75,108 in liquidated damages; $54,075 in front pay (tentative), and $48,157 in attorney fees. The court doesn't award Ms. Pace prejudgment interest, reinstatement (tentative) or injunctive relief.

Ms. Peggy Pace brought suit against Pottawattomie County Club for age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634. Ms. Pace claimed that Pottawattomie discriminated against her because of her age by not allowing her to return to work as a server in the county club restaurant in March 2006, transferring and demoting her to manager of the

1

Red Barn, constructively discharging her from Pottawattomie, refusing to re-hire her between July 2006 and November 2006, and hiring substantially younger, less qualified employees for the position. She further argued that Pottawattomie had a pattern or practice of discriminating against its servers in the main dining room restaurant because of age. At the end of a two day jury trial in July 2009, the jury returned a verdict for Ms. Pace on her age discrimination claims, awarded her back pay on an advisory basis in the amount of $69,011.59 and found that Pottawattomie's violations were willful. The issue of whether there was a pattern or practice of discrimination didn't go to the jury because the court found that the evidence presented at trial was insufficient to establish that claim.

Ms. Pace now seeks a final determination of back pay, liquidated damages, attorney's fees and expenses, an order of reinstatement to employment or alternatively front pay, and injunctive relief requiring Pottawattomie to take all appropriate steps to end any practice of employment discrimination and requiring all current and future directors, officers, managers and supervisors of Pottawattomie to undergo and successfully complete educational and training programs on employment discrimination. Pottawattomie objects to several aspects of the requested relief.

# I. Discussion

A successful plaintiff under the ADEA may recover monetary damages in the form of back pay, and liquidated damages if the defendant's conduct was willful. Franzoni v. Hartmarx Corp., 300 F.3d 767, 773 (7th Cir. 2002) (*citing* Comm'r v. Schleier, 515 U.S. 323, 336 (1995)). In some circumstances, a successful plaintiff also may obtain equitable relief such as reinstatement or front pay. Franzoni v. Hartmarx, 300 F.3d at 773 (*citing* 29 U.S.C. § 626(b) and Downes v. Volkswagen of Am., 41 F.3d 1132, 1141 (7th Cir. 1994)). The parties agreed to submit the back pay issue to the jury on an advisory basis. *See* FED. R. CIV. P. 39(c)(1) ("In an action not triable of right by a jury, the court, on motion or on its own[] may try any issue with an advisory jury . . . . "). An advisory award is subject to the court's independent review. Price v. Marshall Erdman & Assoc., Inc., 966 F.2d 320, 324 (7th Cir.1992) (citations omitted) ("An equity judge can always submit an issue to a jury for advice, but he is not bound by the advisory verdict."). Reinstatement or front pay are equitable issues for the judge's determination rather than the jury's. McKnight v. General Motors Corp., 973 F.2d 1366, 1369-1370 (7th Cir. 1992) (reinstatement); Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 771 (7th Cir. 2006) (front pay). Upon a jury finding of willfulness, liquidated damages must be awarded in the amount of the back pay award. 29 U.S.C. § 626(b); Mathis v. Phillips Chevrolet, Inc., 269 F.3d 771, 777 (7th Cir. 2001) (if an employer acted willfully in violation of the ADEA, "courts are required to assess liquidated damages in the same amount as the compensatory damages.").

*A. Back Pay*

The jury, on an advisory basis, awarded Ms. Pace back pay in the amount of $69,011.59. The purpose of back pay is to put the plaintiff in the same position she would have been if the discrimination had not occurred — *i.e.*, to make her whole. Harper v. Godfrey Co., 45 F.3d 143, 149 (7th Cir.1995); Tomao v. Abott Lab. Inc., No. 04 C 3470, 2007 WL 2225905, at *23 (N.D. Ill. July 31, 2007). "[T]he plaintiff has the burden of proving the damages caused [to] her." Horn v. Duke Homes, Div. of Windsor Homes, Inc., 755 F.2d 599, 606 (7th Cir.1985). Back pay should be determined by "measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant.'" Horn v. Duke Homes, 755 F.2d at 606 (citations omitted) (Title VII). "Calculation of back pay is not an exact science." Thompson v. Altheimer & Gray, No. 96 C 4319, 2001 WL 1618717, at *2 (N.D. Ill. Dec. 18, 2001) (Title VII). Ms. Pace is entitled to back pay calculated as the difference between the wages she would have received had she remained at Pottawattomie less the wages she earned at Red Lobster.

During her employment with Pottawattomie from 2002 to March 2006, Ms. Pace averaged a 12.5 percent annual pay increase. By 2005, Ms. Pace's annual income was $31,297. The jury was presented with evidence that Ms. Pace was constructively discharged from Pottawattomie in March 2006 as a server in the main dining room. The evidence further showed that Ms. Pace tried to get her server position back with Pottawattomie in April 2006, but was refused. In April

2006, Ms. Pace went to work as a server for Whittaker Woods golf course and she began working as a server for Red Lobster in October 2006. She made $8,287 in 2006, $16,628 in 2007, $17,623 in 2008 and had made $7,103 through May 2009. Ms. Pace provided the jury with two calculations for back pay by taking her assumed salary at Pottawattomie less her actual income from 2006 through May 24, 2009. The first amount — $56,635.94 — was based on the assumption that Ms. Pace's average income at Pottawattomie would have stayed the same ($31,297) and the second amount — $69,011.59 — was based on the assumption that her income at Pottawattomie would have increased by 5 percent per year.

Pottawattomie contends that the jury's back pay calculation is inappropriate because it employs an unsubstantiated assumption of 5 percent growth in Ms. Pace's projected annual income and doesn't adequately account for her present rate of compensation at Red Lobster. Pottawattomie reasons that Ms. Pace presented no evidence that Pottawattomie's servers actually experienced or could reasonably be expected to have experienced 5 percent growth in wages since Mr. Pace's departure.[1] Pottawattomie notes that Ms. Pace testified about the negative impact today's economy has had on her income as a server with her current employer and says nothing in the trial record suggests that Pottawattomie's

---

[1]Ms. Pace contends that Pottawattomie has waived any argument that the 5 percent wage growth assumption is unsupported by the evidence by not presenting evidence at trial that the 5 percent increase was unreasonable, inappropriate or otherwise objectionable. Because the back pay issue was submitted to the jury on an advisory basis, the court declines to find that Pottawattomie waived its right to object to the foundation of the back pay award post-trial.

servers have been immune from these same economic effects. Pottawattomie also asserts that it has suffered significant declines in membership and dining revenue as a result of the recession, with a corresponding negative impact on server income. Pottawattomie, however, doesn't present any evidence that it has suffered an economic downturn and the court cannot rely on Pottawattomie's statements in its brief as evidence of this fact.

Ms. Pace presented evidence that she averaged a 12.5 percent annual pay increase while at Pottawattomie and from this evidence, it is isn't unreasonable to find that her pay would have continued to increase at a modest 5 percent per year. *See e.g.*, <u>Hathaway v. New Dimension Ctr. for Cosmetic Surgery</u>, No. 03 C 5848, 2006 WL 1594060, at *3 (N.D. Ill. June 6, 2006) (finding in a Title VII action that the evidence at trial showed that the plaintiff's salary on average had increased each year while working for the defendant and therefore, the plaintiff had sufficiently established that her salary would have increased annually during the period of time for which she was eligible for back pay). Any negative affect from the economic downturn on Ms. Pace's assumed pay at Pottawattomie is accounted for in the difference between the average 12.5 percent increase that she had experienced while working there and the more modest 5 percent increase she seeks.

Pottawattomie also notes that when Ms. Pace worked there all her tips were included on her W-2 form because Pottawattomie automatically charges 18 percent gratuity to members' accounts. At Red Lobster, all tips through credit card

payments are reported on her W-2 and an additional 8 percent is reported, but this doesn't account for all cash tips that Ms. Pace receives. Ms. Pace estimated that her tips at Red Lobster are higher than 8 percent, saying that "most people" leave 10 percent "nowadays because of our economy." Pottawattomie believes that based on the under-reporting of income at Red Lobster, Ms. Pace's back pay calculation should be reduced by 10 percent. Ms. Pace responds that any under-reporting accounts for at most approximately 2 percent of her wages and is therefore *de minimis.*

The court cannot with any reasonable certainty determine the amount of cash tips that were unreported. Because all credit card transactions are reported and 8 percent is added on her W-2 to account for cash tips, the court can say with reasonable certainty that the under-reporting of income was minimal. To account for any discrepancies, the court finds it appropriate to reduce Ms. Pace's back pay award by 5 percent.

Ms. Pace asks for an additur to the jury's advisory back pay award because the evidence presented to the jury only showed the amounts due through May 24, 2009 — the latest date Ms. Pace could use in preparing her exhibits for exchange with Pottawattomie. Ms. Pace contends that she is entitled to back pay through the date of judgment and that a *pro rata* adjustment to the jury verdict is appropriate. *See* Bank v. Travelers Cos., 180 F.3d 358 (2d Cir. 1999) (ADEA). Pottawattomie disagrees, stating that such a *pro rata* adjustment to back pay is a Second Circuit principle and there isn't any authority authorizing such a

procedure in this circuit.

Although it doesn't appear that our court of appeals has addressed the issue of extending back pay through the date of judgment, the reasoning of the Second Circuit is persuasive. The Second Circuit has found that "[a] plaintiff who has proven a discharge in violation of the ADEA is, as a general matter, entitled to backpay from the date of discharge until the date of judgment." Banks v. Travelers, 180 F.3d at 364 (*quoting* Kirsch v. Fleet St., Ltd., 148 F.3d 149, 167 (2d Cir.1998)). The court explained:

> In calculating its back pay award, the jury will obviously not be able to anticipate the date on which judgment will enter. Accordingly, any lag time between the jury's verdict and the district court's ultimate judgment ordinarily should be remedied by the court, in the form of a pro rata increase of the back pay award. *Cf.* Nord v. United States Steel Corp., 758 F.2d 1462, 1472-73 (11th Cir.1985) (back pay award should extend to date of judgment, rather than to earlier date on which court announced findings of fact following bench trial).

Banks v. Travelers, 180 F.3d at 364; *see also* Harding v. Cianbro Corp., 498 F. Supp. 2d 337, 340 (D. Me. 2007) (claim under ADA; "[t]his conclusion is consistent with the court's obligation, imposed by Congress and recognized by the United States Supreme Court, to make the employee whole."). "The back pay period for victims of job discrimination typically begins on the date the economic loss starts and ends on the date of entry of judgment." Chapin v. Fort-Rohr Motors, Inc., 1:06-CV-34, 2009 WL 89658, at *1 (N.D. Ind. Jan. 13, 2009) (Title VII).

Ms. Pace calculated the additur as amounting to $1,674.57 per month,

which would amount to a total of $10,050 through November. The awarded back pay ($69,011), plus the additur ($10,050), reduced by 5 percent, equals $75,108. The court awards Ms. Pace $75,108 in back pay.

## B. Liquidated Damages

A finding of willfulness entitles a plaintiff to liquidated damages in an amount equal to the back pay award. 29 U.S.C. § 626(b); Mathis v. Phillips Chevrolet, Inc., 269 F.3d 771, 777 (7th Cir. 2001) (if an employer acted willfully in violation of the ADEA, "courts are required to assess liquidated damages in the same amount as the compensatory damages."). Pottawattomie contends that the evidence submitted at trial was insufficient for a reasonable jury to conclude that Pottawattomie's discriminatory conduct was willful and asks the court to set aside the finding of willfulness. Pottawattomie hasn't provided support for this position and merely states in a conclusory fashion that the evidence was insufficient. Further, Pottawattomie didn't challenge the sufficiency of evidence at trial. "[I]n order to preserve for appeal a challenge to the sufficiency of the evidence, the challenge must be raised in a Rule 50(a) motion for judgment as a matter of law before the case is submitted to the jury." Houskins v. Sheahan, 549 F.3d 480, 488-489 (7th Cir. 2008) (citing Chemetall GMBH v. ZR Energy, Inc., 320 F.3d 714, 718-719 (7th Cir. 2003)); see also Maher v. City of Chicago, 547 F.3d 817, 824 (7th Cir. 2008) ("A failure to file a pre-judgment motion under Rule 50(a) prevents this court from reviewing the sufficiency of a jury verdict.") (citation omitted).

Pottawattomie has waived its right to challenge the jury's finding of willfulness.

In any event, there was sufficient evidence for a reasonable jury to find that Pottawattomie acted willfully. A violation is considered "willful" if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Mathis v. Phillips Chevrolet, 269 F.3d at 777 (citations omitted). To prove willfulness, it isn't necessary for the plaintiff to show that the "employer's conduct was outrageous, or provide direct evidence of the employer's motivation." Mathis v. Phillips Chevrolet, 269 F.3d at 777 (citations omitted). "An employer who truly violates the ADEA without knowing it and whose ignorance is not reckless is protected from a finding of recklessness." EEOC v. Bd. of Regents of Univ. of Wisconsin System, 288 F.3d 296, 304 (7th Cir. 2002) (citation omitted).

The jury found that Pottawattomie violated the ADEA by taking a material adverse employment action against Ms. Pace because of her age. Ms. Pace's supervisor, Laureen Glennon f/n/a Laureen Fredenburg, testified that she knew in 2006 that it was impermissible to deny employment opportunities to persons over age 40 on account of their age. (Trial Tr. pp. 92-93). It was Pottawattomie County Club's policy to hire the most qualified applicant for a job, regardless of the applicant's race, color, sex, age, disability or national origin. (Trial Tr. pp. 91-92, Pl's Ex. 18). There was evidence presented to the jury that despite Ms. Pace being an excellent server and a dedicated and reliable employee (Trial Tr. pp. 96-97, 104, 204), she was told in March 2006 that she would no longer be a server in the main dining room (Trial Tr. pp. 147-148), and instead was demoted to the

Red Barn (Trial Tr. pp. 153-154, 162-163). The evidence also showed that Pottawattomie replaced her with significantly younger employees. (Trial Tr. pp. 104-105, 151-153, 162; *see also* Pl's Ex. 12). Former Pottawattomie employee Kim Reed testified that in December 2005 or early January 2006, Ms. Glennon said she needed to hire younger servers. (Trial Tr. pp. 206-207). This is only some of the evidence presented during trial, and although Pottawattomie presented contradictory evidence, sufficient evidence was presented for the jury to find that Pottawattomie acted willfully in discriminating against Ms. Pace because of her age.

Because the jury found that Pottawattomie acted willfully, the court awards Ms. Pace $75,108 in liquidated damages.

## C. Prejudgment Interest

Ms. Pace has withdrawn her claim for prejudgment interest. Prejudgment interest shouldn't be awarded in age discrimination cases in which liquidated damages are awarded. Price v. Marshall Erdman & Assoc., 966 F.2d at 326 (citation omitted); Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am., 950 F.2d 389, 397 (7th Cir. 1991).

## D. Reinstatement

The court has the discretion to order reinstatement for a violation of the

ADEA. 29 U.S.C. § 626(b); EEOC v. Century Broad. Corp., 957 F.2d 1446, 1462 (7th Cir. 1992) (ADEA). "[R]einstatement is the preferred remedy for victims of discrimination, and the court should award it when doing so is feasible." Bruso v. United Airlines, Inc., 239 F.3d 848, 861 (7th Cir. 2001) (citations omitted) (Title VII). A court isn't, however, "required to reinstate a successful plaintiff where the result would be a working relationship fraught with hostility and friction." Bruso v. United Airlines, 239 F.3d at 861. "[R]einstatement may become particularly infeasible if the plaintiff would no longer enjoy the confidence and respect of [her] superiors once reinstated." Bruso v. United Airlines, 239 F.3d at 862; *see also* Downes v. Volkswagen of Am., Inc., 41 F.3d 1132, 1141 (7th Cir. 1994) (stating that reinstatement is the preferred remedy, but is not always appropriate). The court should consider hostility in the employment relationship and lack of an available position. Downes v. Volkswagen, 41 F.3d at 1141. The employer's anger or hostility toward the plaintiff for having filed suit, however, cannot be a basis to deny reinstatement. Bruso v. United Airlines, 239 F.3d at 862.

Ms. Pace seeks reinstatement as head server, but only if the court orders Pottawattomie to abide by certain terms and conditions of employment.[2] Requiring

---

[2]For example, if reinstatement is awarded, Ms. Pace requests an order stating that:

- Pottawattomie must offer Ms. Pace the opportunity to work *all* special events for a period of five years;

- Pottawattomie's board of directors and management and supervisory employees must undergo employment discrimination training for five years to be conducted by one or more professionals approved in advance by Ms. Pace's counsel. The individuals must pass the training course and if any

Pottawattomie to abide by such conditions would essentially amount to court supervised employment, and such a remedy isn't appropriate in this case. The litigation was contested and Ms. Pace states she is concerned about returning to Pottawattomie and working in a hostile environment where the customers and clientele are the same people who will have to satisfy the judgment in this litigation. Ms. Pace explains that because Pottawattomie is a private club, it can raise money to satisfy this judgment by making assessments against its members — the very people on whom Ms. Pace would be relying for her income if reinstated. Ms. Pace's suggested conditions don't address this concern. Pottawattomie responds that after all that has transpired between Ms. Pace and Pottawattomie and the purported "onerous or demeaning" circumstances leading to Ms. Pace's alleged constructive discharge, there is no basis to conclude that Ms. Pace and Pottawattomie would be able to enjoy a productive and amiable working relationship with mutual confidence and respect.

The parties don't dispute that Ms. Pace was a good server while at Pottawattomie and is qualified for the position. There is no evidence that the position is unavailable and Ms. Glennon (who carried out the discriminatory acts)

---

individual doesn't pass, he or she must take the course on repeated occasions until he or she successfully completes the training; and

- if in the next five years, Ms. Pace believes she is being treated differently or inappropriately because of prosecution of her age discrimination claims, she must contact Pottawattomie and Pottawattomie must respond within ten days. If Pottawattomie's response is unsatisfactory, Ms. Pace has the option to present the issue to the court for remedial and enforcement purposes.

is no longer employed at Pottawattomie. Further, Ms. Pace says she harbors no animosity toward Pottawattomie's current managers. These facts favor reinstatement. On the other hand, given the parties' current relationship, Ms. Pace only sees reinstatement as a viable option if various conditions are imposed on Pottawattomie. These conditions don't address Ms. Pace's concern that Pottawattomie members might show hostility toward her as a result of this judgment. These facts disfavor reinstatement.

In light of the present circumstances and the parties' mutual concerns with reinstatement, the burden on the court of supervising the employment relationship would be disproportionate to any gains from reinstatement. An award of front pay (as addressed below) is a more appropriate remedy in this case. "The availability of front pay supports a policy of *not* compelling reinstatement in circumstances where such debilitating frictions between employer and employee can be anticipated that the court might have to exercise continuing supervision over the employment relationship for many years." Avitia v. Metro. Club of Chicago, Inc., 49 F.3d 1219, 1231 (7th Cir. 1995) (citation omitted) (emphasis in original) (FLSA). The court declines to order reinstatement.


### E. Front Pay

When reinstatement is not an advisable remedy, the court can award a successful ADEA plaintiff front pay depending on the circumstances of the case.

14

Downes v. Volkswagen, 41 F.3d at 1141 (citations omitted) (*citing* 29 U.S.C. § 626(b)). Front pay is designed to place the plaintiff "in the identical financial position that [she] would have occupied had [she] been reinstated." Bruso v. United Airlines, 239 F.3d at 862 (citation omitted). Front pay is "a lump sum . . . representing the discounted present value of the difference between the earnings [an employee] would have received in [her] old employment and the earnings [she] can be expected to receive in [her] present and future, and by hypothesis inferior, employment." Downes v. Volkswagen, 41 F.3d at 1141, n. 8 (citations omitted). "In deciding whether to award front pay, the court considers such factors as whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded." Downes v. Volkswagen, 41 F.3d at 1141 (citations omitted). The trial court has broad discretion in awarding front pay. Downes v. Volkswagen, 41 F.3d at 1142.

Previous cases have suggested that the presence or absence of a liquidated damages award is material in determining entitlement to front pay, but it should play only a very small role in that determination. Price v. Marshall Erdman & Assoc., Inc., 966 F.2d 320, 326 (7th Cir. 1992) (ADEA).

> [T]o exclude front pay on top of excluding prejudgment interest would make no sense, for with prejudgment interest and front pay both barred an award of double damages might well fall short of compensation and thus contain no punitive component at all (in fact

contain a negative punitive component). In such a case the plaintiff might be better off if the violation were adjudged *not* willful.

Price v. Marshall Erdman & Assoc., 966 F.2d at 326 (emphasis in original).

Front pay awards are limited in duration because they are only awarded to cover such time that the employee can reasonably be expected to have moved on to similar or superior employment. Williams v. Pharmacia, Inc., 137 F.3d 944, 954 (7th Cir. 1998) (Title VII); *see also* Tomao v. Abott Lab. Inc., No. 04 C 3470, 2007 WL 2225905, at *27 (N.D. Ill. July 31, 2007) (same). Further, "front pay is only designed to compensate a plaintiff from the lost earnings from [her] old job for as long as [she] 'may have been expected to hold it.'" Shick v. Illinois Dept. of Human Servs., 307 F.3d 605, 614 (7th Cir. 2002) (citations omitted) (Title VII). "A plaintiff who seeks an award of front pay must provide the district court with the essential data necessary to calculate a reasonably certain front pay award[,]" such as "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." Bruso v. United Airlines, 239 F.3d at 862-863 (citation omitted) (quotation marks and citation omitted). Front pay awards cannot be unduly speculative; the longer a proposed front pay period, the more speculative the damages become. Hybert v. Hearst Corp., 900 F.2d 1050, 1056 (7th Cir. 1990) (citation omitted) (ADEA); McKnight v. General Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992) (Title VII and § 1981). A court cannot simply base an award of front pay on the plaintiff's own stated intentions. Pierce v. Atchison, Topeka & Santa Fe Ry. Co., 65 F.3d 562, 274 (7th Cir.1995) (citation

omitted) (ADEA); *see also* <u>Chapin v. Fort-Rohr Motors, Inc.</u>, No. 1:06-CV-34, 2009 WL 89658, at *5 (N.D. Ind. Jan. 13, 2009) (Title VII).

Ms. Pace seeks an award of front pay calculated through age 65. She cites evidence showing that she was a good employee, liked her job and would have remained working there but for the discriminatory conduct. Despite her efforts, Ms. Pace hasn't been able to find a server position with comparable pay. At Red Lobster, she earned more than $17,000 less than her projected income in 2007 and more than $18,000 less than her projected income in 2008. Ms. Pace is 46 years old and says she intends to continue to work as a server until she reaches 65. She therefore seeks a front pay award of $17,000 a year for nineteen years, discounted to presented value.

Pottawattomie says front pay is too speculative. Pottawattomie contends that the evidence at trial showed that the need for servers varies throughout the year and depends on the number of events the employee works. Pottawattomie further points out that Ms. Pace hasn't presented evidentiary support to show that her wages at Red Lobster won't improve in the future, that she will be unable to find better employment during the next 19 years (despite her acknowledged skills and qualifications as a server) or that she would have continued to serve at Pottawattomie until age 65.

The court agrees with Pottawattomie that a front pay award for nineteen years is too speculative. *See* <u>McKnight v. General Motors</u>, 973 F.2d at 1371-1372

("Damages in employment discrimination cases are not intended to insure a plaintiff's future financial success. Damages should ordinarily extend only to the date upon which 'the sting' of any discriminatory conduct has ended. . . . The longer a proposed front pay period, the more speculative the damages become.") (quotation marks and citations omitted); *see also* <u>Branham v. Snow</u>, No. 1:01-CV-0152, 2006 WL 3230310, at *9, 12 (S.D. Ind. June 19, 2006) (noting that "Seventh Circuit caselaw provides the court with substantial guidance discouraging district courts from awarding front pay for long periods of time" and stating that the plaintiff's requested fifteen years of front pay was far in excess) (*citing* <u>Mattenson v. Baxter Healthcare Corp.</u>, 438 F.3d at 771 (affirming the district court's decision not to award any front pay even though the plaintiff "probably won't be able to find another job that pays him" the amount he was paid prior to the discriminatory act)).

The evidence isn't sufficient to award front pay to Ms. Pace for nineteen years. There is a lack of evidence showing that Ms. Pace won't be able to find better employment within the next nineteen years or that she would have continued to work as a server at Pottawattomie until age 65. *See* <u>Williams v. Pharmacia, Inc.</u>, 137 F.3d 944, 954 (7th Cir. 1998) ("Just as a reinstated employee may be expected to leave his or her position for comparable or better employment, an employee receiving front pay in lieu of reinstatement is entitled to front pay only until such time that the employee can reasonably be expected to have moved

on to similar or superior employment."). Ms. Pace had worked at Pottawattomie for about four years before her termination; she was an excellent employee and wanted to remain working as a server in the main dining room. Based on this evidence, it is reasonable to infer that she would have continued to work at Pottawattomie for at least the next four years, possibly longer. Given Ms. Pace's experience and qualifications as a server though, the court finds that it is reasonable to expect Ms. Pace to find comparable employment within the next four years. Ms. Pace now works at Red Lobster and has been unable to find a server position that produces comparable income to Pottawattomie, but this doesn't persuade the court that she will be unable to find a similar or superior job in the next nineteen years.

It is appropriate to award Ms. Pace four years of front pay. Although not a material consideration, the court finds that an award of liquidated damages combined with four years of front pay is sufficient to make Ms. Pace whole. An estimate of $17,000 a year is reasonable given the pay differential between Red Lobster and Pottawattomie, even taking into consideration any under-reporting of income at Red Lobster. The parties have agreed to use the cumulative historical average Federal Reserve prime rate — 9.84 percent — as the discount rate. Accordingly, based on the evidence presented, the court is inclined to award Ms. Pace front pay in the amount of $17,000 per year for four years, discounted at the

rate of 9.84 percent, for a total of $ 54,075.[3]

### F. Injunctive Relief

Irrespective of the court's decision on reinstatement or front pay, Ms. Pace seeks injunctive relief requiring Pottawattomie to take all appropriate steps to end any practices of employment discrimination and requiring all current and future directors, officers, managers and supervisors to submit to educational training and testing regarding employment discrimination. Ms. Pace notes that despite the jury's finding that Pottawattomie willfully violated the ADEA, Pottawattomie doesn't acknowledge its wrongdoing. Ms. Pace therefore believes Pottawattomie will repeat its conduct with other workers unless some program of education is ordered by the court.

The court denies Ms. Pace's request for injunctive relief. First, the court hasn't ordered reinstatement and it wouldn't seem that Ms. Pace can seek injunctive relief that will have no affect on her individually. *See e.g.*, Jadwin v. County of Kern, No. 1:07-CV- 26, 2009 WL 2424565, at *8 (E.D. Cal. Aug. 6, 2009) (finding that even if the plaintiff had standing at the time of the pleading,

---

[3]Pottawattomie has requested an evidentiary hearing to present rebuttal evidence to the entry of a front pay award. Pottawattomie intends to present evidence to show that Ms. Pace's proposed front pay award for nineteen years is grossly overstated. Ms. Pace agrees to an evidentiary hearing. The court isn't inclined to hold an evidentiary hearing on this issue, but will consider holding a hearing on front pay and reinstatement upon a motion filed by either party within ten days from the date of this order describing briefly the party's anticipated evidence.

his claim for injunctive relief was moot where he wasn't seeking reinstatement); *see also* <u>Tennes v. Com. of Mass., Dept. of Revenue</u>, 944 F.2d 372, 382 (7th Cir. 1991) ("Tennes' request for injunctive relief from the discriminatory conduct by the Commonwealth is moot since he will not be reinstated to his former position."); <u>Olian v. Board of Educ. of City of Chicago</u>, 631 F. Supp. 2d 953, 967 (N.D. Ill. 2009) (finding that injunctive relief is inappropriate because plaintiff no longer worked for the defendant and had no desire to return; "an injunction make little sense, as it would have absolutely no effect on her individually.").

Second, the court doesn't find that the discriminatory behavior will likely continue in the future. Injunctive relief might be appropriate even where the plaintiff has produced no evidence of discrimination going beyond the particular claimant's case. <u>EEOC v. Ilona of Hungry, Inc.</u>, 108 F.3d 1569, 1578 (7th Cir. 1997) (Title VII). In deciding whether to grant injunctive relief for a successful discrimination plaintiff, the proper inquiry is whether the defendant's "discriminatory conduct could possibly persist in the future." <u>Bruso v. United Airlines</u>, 239 F.3d at 864 (Title VII); *see also* <u>EEOC v. Gurnee Inn Corp.</u>, 914 F.2d 815, 817 (7th Cir. 1990) (holding that the district court properly awarded an injunction when it was possible that the sexual harassment complained of might persist in the future because the manager who was aware of the harassment, but did nothing to prevent it, was still employed by the defendant). The evidence produced at trial showed that Ms. Pace's supervisor, Ms. Glennon, was the person

who carried out the discriminatory acts and she is no longer employed there. Given the verdict in this case, Pottawattomie has every reason to attempt to avoid a discrimination lawsuit in the future. Because there is a reasonable probability that Pottawattomie won't discriminate in the future and because Ms. Pace is no longer employed there, injunctive relief in the form of training is not an appropriate remedy.

### G. Attorney Fees

One who has prevailed on the merits of her ADEA claim may also be entitled to an award of reasonable attorney's fees and costs. *See* 29 U.S.C. §§ 216(b), 626(b). The fees awarded must be reasonable, and a court must consider the relationship between the extent of success and the amount of the fee award. Farrar v. Hobby, 506 U.S. 103, 115-116 (1992) (*quoting* Hensley v. Eckerhart, 461 U.S. 424, 438 (1983)). The most basic formulation in computing a reasonable fee is the reasonable number of hours worked by the prevailing attorneys multiplied by a reasonable hourly rate — the lodestar figure. Hensley v. Eckerhart, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, 461 U.S. at 433. The prevailing party has the burden of showing the reasonableness of the fee request. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir.1999).

A reasonable hourly rate is derived from the market rate for the services

rendered; the "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." Spegon v. Catholic Bishop, 175 F.3d at 555 (citations omitted). The prevailing party should produce satisfactory evidence beyond his own affidavit showing that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Spegon v. Catholic Bishop, 175 F.3d at 556 (*citing* Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)). An attorney can make this showing "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases." Spegon v. Catholic Bishop, 175 F.3d at 556 (citation omitted). "[O]nce the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." Spegon v. Catholic Bishop, 175 F.3d 544, 554-555 (7th Cir.1999); *see also* Firestine v. Parkview Health Sys., Inc., 374 F. Supp. 2d 658, 662 (N.D. Ind. 2005).

"As to the reasonableness of the hours expended, when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000)

(citations omitted). The district court should exclude excessive, redundant or otherwise unnecessary hours. <u>Firestine v. Parkview Health</u>, 374 F. Supp. 2d at 664.

Ms. Pace seeks attorneys' fees and costs in the amount of $54,232 and in support, attaches her counsel's billing entries. Mark Phillips, Ms. Pace's primary attorney, billed 172.50 hours at the rate of $250 per hour. Mr. Phillips was assisted by an associate, Nicholas Otis, who billed 34.20 hours at $175 per hour and a paralegal, Lynn Stalbrink, who billed 32.85 hours at $100 per hour.[4] Pottawattomie makes the following objections to the fee request: (1) the hourly billing rate is not supported by proper evidence; (2) certain entries are excessive, redundant, or otherwise unnecessary; (3) certain entries are too vague and inadequately documented; (4) certain entries use improper block billing; and (4) and certain entries seek compensation for clerical and administrative tasks.

To support the request's reasonableness, the plaintiff submits an affidavit from Mr. Phillips stating that his current standard hourly rate is $290 per hour and attaching an itemization of the time the attorneys and paralegal spent on this case. Mr. Phillips attests that the amounts billed were all reasonable and necessary expenditures in the proper representation of Ms. Pace. The plaintiff also submits affidavits from two attorneys, Steven Johnson and Larry Evans, who practice labor and employment law in the Northern District of Indiana. Both

---

[4]Another associate, Michelle Shirk, billed 1.5 hours at $135 per hour.

attorneys know Mark Phillips and are familiar with his competence, abilities and reputation in the representation of clients in employment discrimination issues. They state that they are familiar with the reasonable fee charged by attorneys in this field and that a reasonable rate for attorneys with the experience and ability similar to Mr. Philips would range from $250 to $350 per hour.

Pottawattomie contends that the Johnson and Evans affidavits aren't proper because they were never disclosed as expert witnesses under Federal Rule of Civil Procedure 26(a)(2) and Ms. Pace didn't submit an expert report for either affiant. Further, Pottawattomie contends that the affidavits don't satisfy the reliability test under Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). Pottawattomie doesn't present any legal authority, and the court doesn't find any, that would require disclosure of such witnesses pursuant to Rule 26. The court declines to strike the affidavits on that basis. The affiants are reliable and qualified to present evidence of a reasonable hourly rate. Because Pottawattomie hasn't presented evidence to show that $250 an hour is unreasonable, the court accepts this rate as the prevailing market fee. *See* Harper v. City of Chicago Heights, 223 F.3d 593, 604 (7th Cir. 2000) ("While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden."). Further, although Ms. Pace hasn't presented evidence to support Mr. Otis's and Ms. Stalbrink's hourly rates,

Pottawattomie doesn't suggest a reasonable rate for their time. The rates of $175 and $100, respectively, are reasonable when compared to Mr. Phillips' rate.

Pottawattomie objects to Ms. Pace's counsel use of "block billing" — listing strings of tasks performed on a particular day and the total time spent on them without indicating how much time was spent on each task. Ms. Pace's counsel admits that there are instances of "block billing", but says that's because counsel often performs multiple tasks simultaneously. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." Farfaras v. Citizens Bank & Trust of Chicago, 433 F.3d 558, 569 (7th Cir. 2006). "There is nothing inherently wrong with [combining multiple tasks into one entry]. . . ." Dupuy v. McEwen, No. 97 C 4199, 2009 WL 2498197, at *17 (N.D. Ill. Aug. 13, 2009) (citations omitted); O'Sullivan v. City of Chicago, 484 F. Supp. 2d 829, 835, n. 7 (N.D. Ill. 2007) ("Although lump or block billing does not provide the best possible description, it is not a prohibited practice that inevitably necessitates reduction in the amount of fees requested."). The court must decide whether the entries are detailed enough for the opposing party and the court to determine whether the time billed accurately reflects the time spent on the case. Dupuy v. McEwen, 2009 WL 2498197, at *17 (citation omitted).

The court agrees that there are some instances where the lump sum billing entries are too vague and don't provide the court with enough documentation to evaluate the fee's reasonableness. For example, the entry on June 3, 2008 for 3.8

hours lumps together the following: "Conference with client; Prepare additional discovery requests to Defendant; Correspondence with Attorney Pagos." Most of the entries that use block billing, though, are sufficiently detailed and adequately document counsel's time. The following block entries by Mr. Phillips should be reduced by 50 percent for being too vague: 3/19/08 - 2.25 hours, 5/28 - 2.00, 6/3 - 3.80, 8/26 - 3.75, 3/23/09 - 1.75, 3/24 - 3.20, 3/26 - 4.25, 4/14 - 1.50, 6/24 - 3.90, 6/30 - 2.60. Mr. Phillips' time is therefore reduced by 14 hours for block billing.

Pottawattomie indicates several entries that they believe are excessive, redundant, or otherwise unnecessary. For example, there is a charge for .25 hours on July 29, 2009 for a conversation with Pottawattomie's counsel about the possibility of reinstatement to employment. The call admittedly was only for .10 hours; Mr. Phillips indicates that he omitted from the billing statement the follow-up telephone conversation he had with Ms. Pace regarding his discussion with Pottawattomie's counsel. By way of example, Pottawattomie also points out that Mr. Phillips charged 1.9 hours on July 13, 2009 to draft a two-page response to Pottawattomie's emergency motion for extension of time and contends that this amount is excessive.

The plaintiff's counsel should exclude from his request excessive, redundant or otherwise unnecessary expenses; in the event counsel does not exercise such judgment, the district court may reduce the number of hours accordingly. <u>Hensley</u>

v. Eckerhart, 461 U.S. at 433. The admitted omission from the July 29 entry gives the court some hesitation in accepting the billing statements as entered, but after a careful review of the entries, the court finds that only the following entries are excessive: 3/18/08 MLP - 1.75 hours, 4/6/09 NTO - 2.80, 5/20 NTO - 3.90, 5/27 NTO - 3.20, 6/12 MLP - 4.20, 7/13 MLP - 1.90. It is appropriate to reduce these entries by 50 percent, so that Mr. Phillips's time is reduced by an additional 4 hours and Mr. Otis's time is reduced by 5 hours.

Pottawattomie further contends that several entries were for administrative or clerical tasks and shouldn't be included in the fee award. The court shouldn't allow entries that "detail clerical tasks that need not be performed by attorneys, such as time spent filing motions or photocopying." Hyland v. Indicator Lites, Inc., 160 F. Supp. 2d 981, 985 (N.D. Ill. 2001); *see also* Spegon v. Catholic Bishop, 175 F.3d at 553 (the district court should disallow time spent on what are essentially clerical or secretarial tasks). Most of the entries that Pottawattomie claims are clerical are not. For example, the entry on September 16, 2008 (receipt and review and preparation of summary of deposition of Lori Fredenberg) and June 5, 2009 (review of trial brief for proper case citations) aren't clerical tasks.

The court agrees, however, that certain tasks performed were of a clerical nature, such as: sending pleadings to client; review of appearances, summons, waiver of service and other similar documents; payment to EEOC; drafting cover sheets; and filing documents with the court. Although some of these tasks were

performed by a paralegal, they are clerical in nature and cannot be part of the fee award. *See* <u>Firestine v. Parkview Health Sys.</u>, 374 F. Supp. 2d at 667 (reducing time spent by paralegal performing administrative and clerical tasks). The court finds that the following tasks are clerical and are excluded: 7/2/07 MLP - .20 hours, 7/25 LS - .10, 7/26 LS - .25, 7/26 MLP - .25, 8/26 MLP - .25, 9/24/08 LS - .20, 5/21/09 MLP - .25, 6/10 LS - .50, 6/24 NTO - 2.00. The court therefore reduces Mr. Phillips' time by 1 hour, Mr. Otis' time by 2 hours, and Ms. Stalbrink's time by 1 hour.

After a detailed review of the billing statement, the court reduces Mr. Phillips' time by a total of 19 hours, Mr. Otis's time by a total of 7 hours and Ms. Stalbrink's time by 1 hour, for a total reduction of $6,075. An award of $48,157 in attorney fees is reasonable, especially in light of Ms. Pace's success in this case.

## II. Conclusion

Based on the foregoing, the court enters the following damage award in favor of Peggy Pace and against Pottawattomie County Club:

    A. $75,108 in back pay;

    B. $75,108 in liquidated damages;

    C. $54,075 in front pay (tentative); the court permits the parties leave to file a motion for evidentiary hearing on front pay and reinstatement within ten days from the date of this order; and

D.  $48,157 in attorney fees.

The court doesn't award Ms. Pace prejudgment interest, reinstatement or injunctive relief.

SO ORDERED.

ENTERED:   December 11, 2009

          /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court